COURT OF APPEALS
DECISION
DATED AND FILED

June 30, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2026AP359**

Cir. Ct. No. **2025JV705**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN THE INTEREST OF A.V., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-APPELLANT,

  V.

A.V.,

      RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: MILTON L. CHILDS, SR., Judge. *Affirmed*.

¶1 GEENEN, J.[1] In this case, the State filed a delinquency petition charging then-sixteen-year-old A.V. with two counts of physical abuse of a child,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

recklessly causing great bodily harm, and one count of child neglect resulting in great bodily harm. The charges stem from allegations that A.V. abused her one-month-old infant son, B.V., causing severe injuries.

¶2 The State petitioned the circuit court to waive juvenile jurisdiction and transfer the case to adult criminal court. After an evidentiary hearing, the court denied the waiver petition. A.V. subsequently denied the petition's allegations, and the court scheduled a plea and disposition hearing.

¶3 A.V. turned seventeen years old one day after the waiver petition was denied, and the State filed a second waiver petition soon thereafter. The State identified WIS. STAT. § 938.18(2) as the statutory basis for the petition, stating that the statute allows the filing of a waiver petition if the juvenile denies the facts of the petition and becomes seventeen years old before adjudication. The petition made new allegations not contained in the first petition. It alleged that A.V. had repeatedly violated the no-contact condition of the circuit court's temporary nonsecure custody order (the "no-contact order") by communicating with B.V.'s father, C.B.[2]

¶4 The circuit court denied the State's second petition without an evidentiary hearing. The court questioned whether the State's second waiver petition should be construed as a motion for reconsideration based on newly discovered evidence, and it ultimately concluded that the new evidence, even if true, would not have changed the court's decision to deny waiver.

---

[2] The no-contact condition was put in place due to concerns of domestic violence between A.V. and C.B.

¶5    The State now appeals from the circuit court's order[3] denying its second waiver petition, arguing that it was entitled to a second evidentiary waiver hearing under WIS. STAT. §§ 938.18(2) and 938.18(4)(b).

¶6    Upon review, we disagree with the State. WISCONSIN STAT. § 938.18(4)(b) mandates that evidentiary hearings be held on contested waiver petitions, but the State's second waiver petition was not a waiver petition. The circuit court properly construed the State's second waiver petition as a motion for reconsideration. In this case, § 938.18(2) was not a proper basis for the State to bring a waiver petition. We therefore construe the State's second waiver petition as a motion for reconsideration based on newly discovered evidence, and so construed, we affirm the circuit court's order denying the motion.[4]

## BACKGROUND

¶7    On October 7, 2025, the State filed a delinquency petition charging then-sixteen-year-old A.V. with two counts of physical abuse of a child, recklessly causing great bodily harm, and one count of child neglect resulting in great bodily harm. The charges stem from allegations that A.V. abused her one-month-old infant son, B.V., causing severe injuries.

---

[3] This court granted leave to appeal the order. *See* WIS. STAT. RULE 809.50(3).

[4] None of the briefs submitted on appeal comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See id.* (specifying that when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended to its current form in 2021. *See* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021). The reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for eFiling. The pagination requirements ensure that the numbers on each page "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. Supreme Court Note, 2021, WIS. STAT. RULE 809.19.

¶8      The State petitioned the circuit court to waive juvenile jurisdiction and transfer the case to adult criminal court. In early December 2025, days before A.V.'s seventeenth birthday, the court held an evidentiary hearing at which several witnesses testified.

¶9      The State's first witness, Jaden Champion, a human services worker through Milwaukee County's Children, Youth, and Family Services ("CYFS"), testified that he supervised youth in the juvenile justice system, and he prepared a waiver study in relation to A.V.'s case. He noted that A.V. did not have a prior record in the juvenile system or any prior involvement with CYFS, did not have any mental health disorders, and was in 11th grade. Champion stated that A.V. currently lives with her mother and father, and every conversation he has had with A.V.'s family suggests that she is doing well there.

¶10     Champion testified that, based on A.V.'s age, there was only one year available for CYFS to supervise her if she remained in the juvenile justice system. Champion went on to testify about services A.V. could receive through CYFS and services that A.V. was already receiving through other organizations, and recommended parenting programing, anger management programming, and supervised parenting services where she could demonstrate and apply the techniques that she learned. With respect to services A.V. was already receiving, Champion testified that he spoke to an individual administering those services, who described A.V. as "very engaged in those services." Champion also testified that he believed A.V. was "very responsive to treatment," and was more responsive than the majority of juveniles Champion had worked with in the past.

¶11     However, citing A.V.'s age, Champion testified that there would not be adequate time to supervise A.V.'s care of B.V. Given A.V.'s age and the

severity of B.V.'s injuries, Champion recommended that the circuit court grant the State's waiver petition.

¶12 The State's second witness, Dr. Hillary Petska, testified that she was a child abuse pediatrician at Children's Hospital of Wisconsin, and she performed a physical examination of B.V. She concluded that B.V. suffered severe injuries to his brain and body caused by physical abuse. She testified that B.V. had Y-shaped bruises on his arm, several rib fractures that were in the process of healing, and scans of B.V.'s brain and spine revealed bleeding in both locations, as well as swelling in his brain. Additionally, she testified that A.V.'s delay in seeking medical care for B.V. resulted in secondary injury to B.V.'s brain. As a result of the abuse, Dr. Petska opined that B.V. will have life-long delays and problems with physical and mental development.

¶13 The State's third witness, Detective Amy Wahl, testified that, based on her investigation, A.V. was the only person who could have inflicted B.V.'s injuries. She explained that A.V.'s account of what happened to B.V. changed multiple times, from an initial outright denial to a claim that she may have bumped B.V.'s head on her shoulder, before finally claiming that she dropped B.V. on the bathroom floor.

¶14 During her investigation, Detective Wahl obtained a warrant to search A.V.'s cell phone, and the search revealed that A.V. had been on the phone with B.V.'s father, C.B., both the day before and the day that B.V. was taken to the hospital. In particular, the night before B.V. was taken to the hospital, A.V. was on the phone with C.B. for eleven hours, overnight, leaving a call connected

while they were sleeping, because, according to A.V., C.B. was insistent that she stay on these overnight phone calls[5] and would get upset over minor things. Detective Wahl testified that the text messages between A.V. and C.B. were disturbing and that both A.V. and C.B. were verbally threatening to one another. Detective Wahl further testified that A.V.'s parents attempted to separate A.V. from C.B. and even sought an injunction, but the injunction was dismissed after A.V. changed her mind. Detective Wahl also stated that she interviewed C.B. prior to the waiver hearing.

¶15 A.V.'s first witness, Child Protective Services ("CPS") Supervisor Megan Pena, testified about the services A.V. was receiving. Pena testified that A.V. voluntarily enrolled in parenting programming and individual therapy through a charitable organization prior to CPS involvement. Pena stated that A.V. was participating in services and was cooperative with CPS, but it was "yet to be determined" if participation in those services resulted in behavioral change.

¶16 A.V.'s father, R.V., was her second witness. After R.V. testified that A.V. was in the 11th grade and doing very well in school, his testimony focused on A.V.'s relationship with C.B. R.V. testified that A.V. became uncharacteristically distant from their family a few months into her relationship with C.B., and spent most evenings in her room crying. R.V. said that A.V. "went from this jovial, loving, sweet child to someone who was becoming very callous towards the rest of the world" and herself. He stated that he believed that C.B. "manipulated her" and that "she succumbed to his controlling behavior." He

---

[5] Detective Wahl also testified that, based on the text messages she reviewed, both A.V. and C.B. would get upset if the other ended one of these overnight phone calls.

described A.V. as immature for her age and naïve, and he believed that C.B. took advantage of that immaturity.

¶17 R.V. also testified that his wife, A.V.'s mother, went through A.V.'s phone and discovered "[v]ery, very abusive talk" from C.B. to A.V. He also testified that C.B. convinced A.V. to sneak out of the house, and that he once caught C.B. sneaking into their house. R.V. also explained that he and his wife made numerous attempts to separate A.V. from C.B., sought services for A.V. to address her relationship with C.B. and attempted to obtain a restraining order "because of all the threats against her life and physical harm that he continued to threaten her with." Ultimately, R.V. testified that separating A.V. from C.B. was what prompted R.V. to remove A.V. from in-person high school classes, which she attended with C.B., and was "a large portion" of why the family decided to move to Franklin. R.V. believed that the no-contact order the court had imposed between A.V. and C.B. was helping and that a longer no-contact order than what the juvenile justice system could provide would potentially benefit A.V., but he hoped that A.V. "would be on a good road" before she ages out of the juvenile system.

¶18 R.V. testified that A.V. would benefit from ongoing parenting education, domestic violence and individual counseling, and parenting programming that focused on caring for B.V.'s specific needs and included supervision of A.V. while she cared for B.V. to demonstrate her capability. In particular, he stated that domestic violence counseling was "a huge part" of where A.V. needed "some serious help." He also testified that A.V. "has been at one hundred percent commitment" to the services she was receiving, and that he "can definitely see" a positive change in A.V. as a result of those services.

¶19     After hearing the witnesses' testimonies and arguments from counsel, the circuit court denied the State's waiver petition. The court discussed each factor listed in WIS. STAT. § 938.18(5).

¶20     The circuit court first addressed A.V.'s personality, including her motives and attitude, mental or developmental disabilities, physical and mental maturity, pattern of living, prior treatment history, and potential for responding to future treatment. The court found that A.V.'s motives and attitude were generally positive. She was well-behaved, motivated, and was doing well in school, but after entering a relationship with C.B., she became "callous." The court found no history of mental or developmental disability. Although A.V. was physically mature, the court credited R.V.'s testimony that A.V. was mentally "immature" and "naïve," especially in relation to her interactions and behavior with C.B. The court observed that A.V. was receiving counseling and treatment already through other organizations, and the court noted Champion's testimony that A.V. "was very responsive to treatment, she was engaged now, that she's more responsive than other youth that he's worked with," and R.V.'s testimony that A.V. "will be responsive, she's a hundred percent committed, and she's motivated." The court concluded that this factor supported non-waiver.

¶21     The circuit court then addressed A.V.'s prior criminal record, observing that she did not have one and this case was A.V.'s first contact with the criminal justice system. This factor supported non-waiver.

¶22     The circuit court then discussed the seriousness of the offense. The court observed that Dr. Petska gave "extremely thorough testimony" regarding B.V.'s injuries and their long-term consequences. The court described the injuries

as "extremely dangerous" and "extremely serious," concluding that this factor supported waiver.

¶23    The circuit court then addressed the adequacy and suitability of resources available in the juvenile system.  The court began by highlighting Champion's testimony that A.V. needed parenting programming, anger management programming, supervision of her interactions with B.V., and domestic violence counseling.  The court concluded that these programs and services would be available both in the juvenile and adult systems.

¶24    The circuit court then turned to "a big part" of the decision, namely, whether there was enough time for A.V. to receive all the necessary services in the juvenile system given that she would turn seventeen years old the following day.  It examined whether it would be in A.V.'s best interest to keep the case in juvenile court.  It compared the juvenile system to the adult system, stating that "more services are available" in the juvenile system, and that services offered by the juvenile system are more targeted and specific to seventeen-year-olds.  It also stated that the juvenile system is more focused on rehabilitation than the adult system, which the court characterized as having a "punitive" aspect to it.  In the context of A.V.'s responsiveness to future treatment, the court reiterated that, "at this point, [A.V.] is responsive, she's involved, she's motivated."  The court concluded that it was in A.V.'s best interest to have her case heard in juvenile court.

¶25    Finally, the circuit court addressed whether it was in the public's interest to keep the case in juvenile court.  The court found that the public has an interest in ensuring that A.V. is both rehabilitated and held accountable.  It stated that the case was "tricky" because of the domestic violence aspect.  A.V. was both

a "perpetrator" and a "victim," and the court questioned whether it was wise to attempt to rehabilitate A.V. "in a punitive setting, where if she doesn't follow through, she's facing prison time[.]" Ultimately, the court determined that the public would want A.V. to be held accountable, involved in treatment and services, and that the treatment and services should be tailored to her age and maturity level.

¶26 Accordingly, the circuit court held that it was in the best interest of the public for the case to remain in juvenile court, and it denied the State's waiver petition.[6] The same day, A.V. entered a formal denial of the petition's allegations.

¶27 Approximately two months later, after A.V. had turned seventeen years old, the State filed a second waiver petition. The State identified WIS. STAT. § 938.18(2) as the statutory basis for the second petition, stating that the statute allows the filing of a waiver petition if the juvenile denies the facts of the petition and becomes seventeen years old before adjudication. The petition made new allegations not contained in the first petition. It alleged that, after the waiver hearing, police became aware of repeated attempts by A.V. to communicate with C.B. in violation of the court's no-contact order. Specifically, during the period of time after the court imposed the no-contact order but before the waiver hearing, A.V. repeatedly tried to contact C.B. through multiple different electronic communication platforms.

---

[6] The circuit court concluded that the fifth waiver factor, "[t]he desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated in the offense with persons who will be charged with a crime in the court of criminal jurisdiction," was not applicable in this case. *See* WIS. STAT. § 938.18(5)(d).

¶28 The circuit court denied the State's second petition without an evidentiary hearing. The court questioned whether the State's second waiver petition should be construed as a motion for reconsideration based on newly discovered evidence. It then considered how the new allegations, if true, would affect its analysis of the five statutory waiver criteria. It concluded that it would have reached the same result. It observed that the testimony during the first waiver hearing included concerns of and issues with contact between A.V. and C.B., and even with the additional allegations, it was still in both A.V.'s and the public's best interest to allow the case to stay in juvenile court.

¶29 The State now appeals from the circuit court's order denying its second waiver petition.

## DISCUSSION

### I. The State's second waiver petition was properly construed as a motion for reconsideration, and the State was not entitled to a second evidentiary hearing.

¶30 The State argues that the circuit court improperly treated its second waiver petition as a motion for reconsideration, specifically asserting that there is no statutory limit on the number of waiver petitions that can be filed so long as a condition listed under WIS. STAT. § 938.18 is met. Here, the State claims that its second waiver petition was based on § 938.18(2), which states, "if the juvenile denies the facts of the petition and becomes 17 years of age before an adjudication, the petition for waiver of jurisdiction may be filed at any time prior to the adjudication." A.V. denied the facts of the petition, and she turned seventeen years old prior to adjudication. Therefore, the State argues, it was permitted to file a second waiver petition and was entitled to an evidentiary hearing because the second waiver petition was contested.

11

¶31     A.V. argues that WIS. STAT. § 938.18(2) does not allow the State's second waiver petition.  She highlights prior cases involving waiver petitions brought under § 938.18(2), explaining that in those cases, adjudication had not occurred by the time the juvenile was seventeen years old because the juvenile absconded.  Moreover, in those cases, the State had not previously filed a waiver petition.  According to A.V., the conditions set forth in § 938.18(2) can form the basis of a waiver petition only where the State has not previously filed a waiver petition, and where adjudication is not accomplished prior to the juvenile's seventeenth birthday because of some unlawful action by the juvenile (e.g., absconding).  In this case, the State already filed a waiver petition that was fully resolved against it by the circuit court on the merits, and although the case was not adjudicated prior to A.V.'s seventeenth birthday, the lack of final adjudication prior to her birthday was not the result of any unlawful action on A.V.'s part.

¶32     Whether the State was permitted to file the second waiver petition in this case requires us to interpret WIS. STAT. § 938.18.  We review questions of statutory interpretation de novo.  *State v. Lickes*, 2020 WI App 59, ¶16, 394 Wis. 2d 161, 949 N.W.2d 623.  "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect."  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶33     We begin with the language of WIS. STAT. § 938.18(1) and (2).  Section 938.18(1) states that a waiver petition can be filed if the juvenile committed certain statutorily listed crimes on or after their fourteenth birthday or if the juvenile committed any crime on or after their fifteenth birthday.  As relevant here, § 938.18(2) states that a waiver petition must be filed prior to the plea hearing "except that if the juvenile denies the facts of the petition and

12

becomes 17 years of age before an adjudication, the petition for waiver of jurisdiction may be filed at any time prior to the adjudication."

¶34    We have interpreted these statutory sections before, and in doing so, we explained the circumstances under which WIS. STAT. § 938.18(2), standing alone, can allow a juvenile court to waive jurisdiction.  In ***State v. Pablo R.***, 2000 WI App 242, ¶8, 239 Wis. 2d 479, 620 N.W.2d 423, we stated that, in isolation, § 938.18(1) and (2) are unambiguous: § 938.18(1) "sets the parameters, based on age and the alleged offense, concerning when the court has authority to waive a juvenile into adult court," and § 938.18(2) "allows waiver if the person was a juvenile when the action began, there was no waiver request made prior to the plea hearing, and now the person has become an adult and the juvenile proceedings are not yet concluded because the person denied the charge or charges."  However, we determined that these two subsections were ambiguous as applied to the facts of that case.

¶35    In ***Pablo R.***, the juvenile was fourteen at the time he committed the alleged offenses, the charges were not any of those listed in WIS. STAT. § 938.18(1), and therefore, the juvenile could not be waived into adult court under § 938.18(1).  The juvenile denied the facts of the delinquency petition, but he did not appear at his dispositional hearing because he had absconded to Florida. ***Pablo R.***, 239 Wis. 2d 479, ¶¶3-4.  Almost two years later, after the juvenile turned seventeen years old, the State filed a waiver petition under § 938.18(2), and the juvenile was extradited from Florida.  ***Id.***, ¶5.  We were asked to determine if the juvenile court could waive its jurisdiction solely on the basis of § 938.18(2), i.e., that the juvenile denied the facts of the delinquency petition and turned seventeen years old prior to adjudication.  ***Pablo R.***, 239 Wis. 2d 479, ¶6.

13

¶36    Ultimately, we concluded that WIS. STAT. § 938.18(2) allowed the juvenile court "to redefine its jurisdiction to waive when faced with conditions not contemplated or anticipated." *Pablo R.*, 239 Wis. 2d 479, ¶14.  Specifically, we stated that § 938.18(2) "is an expression of legislative will that when a person becomes seventeen and adjudication has not yet been accomplished because of some unlawful action by that person, the situation has changed and waiver into adult court is an appropriate response to the person's action." *Pablo R.*, 239 Wis. 2d 479, ¶14; *see also* *State v. K.A.P.*, 159 Wis. 2d 384, 390-91, 464 N.W.2d 106 (Ct. App. 1990) (involving a delinquent juvenile who absconded and became an adult prior to adjudication and interpreting WIS. STAT. § 48.18(2) (1989-90), the statutory predecessor to § 938.18(2), to be a legislative grant allowing the juvenile court to redefine its jurisdiction when faced with "a condition not present nor reasonably anticipated when the action was commenced").

¶37    In *Pablo R.*, the "unlawful action" that caused adjudication to not occur by the juvenile's seventeenth birthday was the juvenile absconding to Florida for approximately two years.  *See id.*, 239 Wis. 2d 479, ¶17.  In this case, however, no "unlawful action" by A.V. caused adjudication to not occur before her seventeenth birthday.  A.V. turning seventeen years old before adjudication was not a condition that was "not contemplated or anticipated" by the parties or the court.  We agree with A.V. that her turning seventeen years old before adjudication would have been reasonably anticipated based on the timing of the filing of the delinquency petition.  Indeed, that A.V. was going to imminently turn seventeen years old, leaving the juvenile court only one year to administer services and supervise her, was a significant focus of the evidence and arguments related to the State's first waiver petition.  Our decision in *Pablo R.* was clear that WIS. STAT. § 938.18(2) can be the basis for waiver only "when conditions change

14

because of a lawbreaking action by the child, resulting in the child being an adult before adjudication," and in this case, A.V.'s alleged lawbreaking—violating the court's no-contact order—had no effect on the disposition timeline. *See Pablo R.*, 239 Wis. 2d 479, ¶16.

¶38 Accordingly, we conclude that WIS. STAT. § 938.18(2) is not a valid basis for the State's second waiver petition in this case. In our view, the circuit court correctly construed the State's second waiver petition as a motion for reconsideration based on newly discovered evidence, and as such, the State was not entitled to a second evidentiary hearing. While the form of the State's document purported to be a second waiver petition, we agree with the circuit court that the substance of the document is that of a motion for reconsideration based on newly discovered evidence, and it did not err in treating it as such.

## II. Properly construed as a motion for reconsideration, the circuit court did not erroneously exercise its discretion by denying the State's second waiver petition without an evidentiary hearing.

¶39 Having concluded that the State's second waiver petition was properly construed as a motion for reconsideration, we turn to whether the circuit court erroneously exercised its discretion by denying the motion without an evidentiary hearing.

¶40 "[A] circuit court possesses inherent discretion to entertain motions to reconsider 'nonfinal' pre-trial rulings." *Bauer v. Wisconsin Energy Corp.*, 2022 WI 11, ¶13, 400 Wis. 2d 592, 970 N.W.2d 243. Thus, we review a circuit court's order on a motion for reconsideration under the erroneous exercise of discretion standard. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. "A court properly exercises its discretion if it relies on the relevant facts in the

record and applies the proper legal standard to reach a reasonable decision." *State v. Edmunds*, 2008 WI App 33, ¶8, 308 Wis. 2d 374, 746 N.W.2d 590. We can also affirm the order on different grounds than those relied on by the circuit court. *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920.

¶41 "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Koepsell's*, 275 Wis. 2d 397, ¶44. As applied here, newly discovered evidence is evidence that: (1) was discovered after the first waiver hearing, (2) the State was not negligent in seeking, (3) is material, and (4) is not cumulative. *See State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42. Importantly, newly discovered evidence is not new evidence that could have been introduced at the original proceeding for which reconsideration is sought. *See Bauer*, 400 Wis. 2d 592, ¶14. If the movant is able to prove all four of the criteria set forth above, it must be determined whether a reasonable probability exists that a different result would be reached in a proceeding that included the newly discovered evidence. *See Edmunds*, 308 Wis. 2d 374, ¶13.

¶42 Here, the circuit court essentially assumed without deciding that the new allegations of A.V.'s violations of the no-contact order were true, and it denied the State's motion without an evidentiary hearing because it concluded that it would have reached the same result even with that information. Effectively, it concluded that there was no reasonable probability of a different result. The State asserts that the court's original decision to deny waiver was based almost entirely on its belief that A.V. was compliant with the court's orders, but that assertion is belied by the court's explanation of its decision and its analysis of the statutory waiver factors.

¶43    When the circuit court denied the State's first waiver petition, it stated that "a big part" of its decision turned on whether it was in A.V.'s and the public's best interest to keep the case in juvenile court.  It focused not only on the availability of services provided in the juvenile system, but also its belief that the services provided in the juvenile system were more tailored to seventeen-year-olds.  With respect to A.V.'s receptiveness to treatment, the court found that A.V. was responsive, involved, and motivated.  With respect to the public's interest, the court placed great weight on the domestic violence aspect of the case, concluding that the case was "tricky" because A.V. was both a "perpetrator" and a "victim" of domestic violence in her relationship with C.B.  The court never mentioned or relied upon a belief about compliance with the court's no-contact order in rendering its decision, but it did point out on reconsideration that it was already aware of concerns related to contact between A.V. and C.B. based on testimony provided during the original waiver hearing.

¶44    In sum, the State wishes that the circuit court placed more weight on the new evidence it presented in its second waiver petition, but weighing the evidence is a task squarely within the sound discretion of the circuit court.  The court did not erroneously exercise its discretion by assigning less weight to the State's new evidence than the State desired.

¶45    Moreover, there is a second, independent ground on which we can affirm the circuit court, namely, that the evidence presented in the State's second waiver petition is not newly discovered evidence.  In its second waiver petition, the State alleged that A.V. attempted to contact C.B. through multiple different electronic communication platforms during the period of time after the court imposed the no-contact condition, but *before* the original waiver hearing.  Newly discovered evidence is not evidence that could have been introduced at the original

17

proceeding, *see* **Bauer**, 400 Wis. 2d 592, ¶14, and the State does not include any facts in the second waiver petition that, taken as true, would show that the State was not negligent in seeking the evidence. Indeed, prior to the original waiver hearing, detectives were in contact with and interviewed C.B.

¶46 Even if A.V.'s communication attempts had not occurred by the time police interviewed C.B.—and the record is not clear when the interview was conducted—the State does not explain why it could not have followed up with C.B. prior to the waiver hearing to determine whether he had any new relevant information that could be presented at the hearing. In short, the State does not explain why it was not negligent for failing to discover evidence of A.V.'s alleged violations of the no-contact order that existed before the original waiver hearing and was discovered through C.B., an individual with whom police had already made contact and interviewed.[7]

¶47 The State also argues, albeit very briefly, that the circuit court improperly considered imprisonment as a potential outcome if A.V. were waived into adult criminal court. The State relies on **State v. C.W.**, 142 Wis. 2d 763, 419 N.W.2d 327 (Ct. App. 1987), *superseded by statute on other grounds*. In **C.W.**, the circuit court based its decision to deny waiver entirely on its belief that the adult criminal court would impose a more lenient sentence than the juvenile court deemed appropriate. **Id.** at 768 ("The juvenile court, in denying waiver, relied

---

[7] For the first time on appeal, the State alleges that A.V. and C.B. communicated about plans to sneak out of the house, meaning A.V. and C.B. were attempting in-person contact, and that A.V.'s parents were aware of A.V.'s alleged violations of the no-contact order. We do not consider these allegations because they appear nowhere in the record or in the State's second waiver petition.

heavily on its belief that an adult [circuit] court would improperly sentence C.W. if he were found guilty."). The circuit court in ***C.W.*** explained its rationale:

> I'm prepared to rule. I will rule in this case the [S]tate has not met it's [sic] burden on the petition for waiver. I concur with [a testifying probation officer], who I'm sure is aware of the same statistic I am. Eighty percent of the persons waived to adult court are placed on probation. In light of that statistic that was told to me by Walter Dickey, the former director of the Corrections Department in a speech to the judicial conference criminal law and sentencing institute, in light of that I think I have to take into consideration what I think is the very serious nature of the offense this young man has and likelihood he belongs in a setting of total confinement and the likelihood is greater, as [the probation officer] says, he will be incarcerated if kept in the juvenile system [than] in the adult system.

***C.W.***, 142 Wis. 2d at 766.

¶48 In A.V.'s case, the circuit court's brief references to the adult system being at least partially "punitive" in purpose with the possibility of confinement given the serious crimes with which A.V. was charged is no more a violation of the principle set forth in ***C.W.*** as is the State's repeated argument that A.V. could be supervised much longer through probation in the adult criminal system than she would be in the juvenile system. Neither constitutes the type of speculation prohibited by ***C.W.*** because both considerations go to factors set forth in WIS. STAT. § 938.18(5), namely, the "seriousness of the offense" and "[t]he adequacy and suitability of facilities, services and procedures" available in the juvenile system as compared to the adult system. Accordingly, we reject the State's argument that the circuit court violated ***C.W.***

19

## CONCLUSION

¶49 We conclude that the State's second waiver petition was properly construed as a motion for reconsideration, and the State was not entitled to a second evidentiary waiver hearing. Properly construed as a motion for reconsideration, the circuit court did not erroneously exercise its discretion by denying the State's second waiver petition.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.